<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

REGENT INSURANCE COMPANY,       )
                                )  Civil Action
          Plaintiff,            )  No.  09-cv-03434
                                )
     vs.                        )
                                )
                                )
STRAUSSER ENTERPRISES, INC., and )
GARY STRAUSSER,                 )
                                )
          Defendants            )

                *     *     *

APPEARANCES:

          Michael S. Saltzman, Esquire
               On behalf of Plaintiff

          Patrick C. Campbell, Jr., Esquire
               On behalf of Defendants

                *     *     *

### **O P I N I O N**

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on cross-motions for

summary judgement: Strausser Enterprises, Inc. and Gary J.

Strausser's Motion for Summary Judgment filed November 11, 2009;

and Plaintiff Regent Insurance Company's Motion for Summary

Judgment filed November 12, 2009.[1]

---

[1]     By Order dated September 23, 2010 and filed September 24, 2010 I
dismissed both defendants' and plaintiff's summary judgment motions because
plaintiff's Declaratory Judgment Complaint filed July 29, 2009 failed to
establish subject matter jurisdiction of the court.  Both motions were
dismissed without prejudice to seek reinstatement if an amended declaratory
judgment complaint were filed which established this court's jurisdiction.

                                        (<u>Footnote 1 continued</u>):

Each motion for summary judgment was accompanied by a brief and attached exhibits.[2]

The Defendants, Gary J. Strausser and Strausser Enterprises, Inc.'s Response to Plaintiff Regent Insurance Company's Motion for Summary Judgment ("Defendants' Response") was filed on November 18, 2009.[3]  Plaintiff Regent Insurance Company's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") was filed November 20, 2009.

The Defendants, Gary J. Strausser and Strausser Enterprises, Inc.'s, Reply in Support of Their Motion for Summary Judgment ("Defendants' Reply Brief") was filed on December 17, 2009.  On April 12, 2012 The Defendants' Supplemental Memorandum

---

(Continuation of footnote 1):

On October 7, 2010 plaintiff filed an Amended Declaratory Judgment Complaint, which established that this court had subject matter jurisdiction over the within dispute.  On December 7, 2011 the parties filed a Joint Motion for Reinstatement of the Parties Summary Judgment Motions.  By Order dated December 20, 2011 and filed December 21, 2011 I granted the parties' joint motion and reinstated both summary judgment motions.

[2]     Plaintiff's brief is entitled Defendant (sic) Regent Insurance Company's Memorandum in Support of Its Motion for Summary Judgment ("Plaintiff's Brief").  Defendants' brief is entitled The Defendants, Gary J. Strausser and Strausser Enterprises, Inc.'s Memorandum of Law in Support of Their Motion for Summary Judgment.

Plaintiff attached Exhibits "A" through "E" to its motion for summary judgment ("Plaintiff's Exhibits").  Defendants attached Exhibits "A" through "C" to their motion for summary judgment ("Defense Exhibits").  Defense Exhibits "A" through "C" are the same documents as Plaintiff's Exhibits "A" through "C".

[3]     The Defendants, Gary J. Strausser and Strausser Enterprises, Inc.'s Memorandum of Law in Support of Their Response to Plaintiff Regent Insurance Company's Motion for Summary Judgment was attached to defendants' response to plaintiff's motion for summary judgment.

in Support of Their Summary Judgment Motion to Discuss a Recently
Decided Case was filed ("Defendants' Supplemental Brief").

## SUMMARY OF DECISION

For the reasons expressed below, I grant in part, and
deny in part, defendants' motion for summary judgment.  I also
grant in part, deny in part, and dismiss in part, plaintiff's
motion for summary judgment.

Specifically, I conclude that Coverage B of the
Comprehensive Insurance Policy issued by plaintiff Regent
Insurance Company to Strausser Enterprises, Inc. covers the claim
for malicious prosecution in the underlying action captioned as
Segal v. Strausser Enterprises, Inc., No. 07-4647, in the United
States District Court for the Eastern District of Pennsylvania.
More specifically, I conclude that the policy exclusion "Knowing
Violation of Rights of Another", as applied to a malicious
prosecution claim, is ambiguous and therefore does not apply.

Accordingly, plaintiff as defendants' insurer, is
required to defend and indemnify defendants for compensatory
damages in the malicious prosecution claim against defendants in
the underlying action.  However, plaintiff is not required to
indemnify defendants for any damages which may be awarded against
defendants for any other claims asserted in the underlying
action, or for any punitive damages which may be awarded on any
claim against defendants in the underlying action.

- 3 -

## JURISDICTION

This action is properly before the court on diversity jurisdiction.  Plaintiff Regent Insurance Company is a Wisconsin corporation with its principal place of business in Sun Prairie, Wisconsin.  Defendant Strausser Enterprises, Inc. is a Pennsylvania corporation with its principal place of business is in Easton, Pennsylvania.  Defendant Gary Strausser is a Pennsylvania citizen who resides in Easton, Pennsylvania.  The amount in controversy is in excess of $75,000.  See 28 U.S.C. § 1332.[4]

## VENUE

Venue is proper because plaintiff alleges that a substantial portion of the events giving rise to this claim occurred in Northampton County, Pennsylvania, which is in this judicial district.  28 U.S.C. §§ 118 and 1391.

---

[4]     Plaintiff also asserts that the Declaratory Judgment Act, 28 U.S.C. § 2201 provides a basis for jurisdiction for its claim.  (Amended Declaratory Judgment Complaint, ¶ 3) However, while Section 2201 grants district courts authority to "declare the rights and other legal relations of any interested party seeking such declaration," it merely enlarges the range of remedies available and does not create subject matter jurisdiction. 28 U.S.C. § 2201; Luis v. Dennis, 751 F.2d 604, 607 (1984) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194, 1199 (1950)).

        Therefore, the court must find an independent basis for jurisdiction before it can consider a declaratory judgment action.  See Luis, 751 F.2d at 607.  Here, diversity jurisdiction provides that independent basis.  See 28 U.S.C. § 1332.

## PROCEDURAL HISTORY

### Plaintiff's Complaint and Defendants' Counterclaim

On July 29, 2009 plaintiff Regent Insurance ("Regent") filed an eight-Count Complaint for Declaratory Judgment seeking an Order declaring that it does not have a duty to defend or indemnify defendant Strausser Enterprises, Inc. ("SEI") or defendant Gary Strausser (collectively "the Strausser defendants") for claims brought in the underlying action of Segal v. Strausser Enterprises, Inc., No. 07-4647, in the United States District Court for the Eastern District of Pennsylvania ("Segal Action").  Regent seeks declaratory judgment on Comprehensive Insurance Policy, number CCI 0446717 ("Policy").

On October 22, 2009 the Strausser defendants filed their Answer to the Complaint, together with affirmative defenses and a Counterclaim seeking a declaration that Regent has a duty to defend and indemnify them in the Segal Action.[5]

On October 7, 2010 plaintiff filed an Amended Declaratory Judgment Complaint which established that this court had subject matter jurisdiction, but did not change the substance of plaintiff's allegations.[6]

---

[5]     Defendant Strausser Enterprises, Inc. and Gary Strausser's Answer, Affirmative Defenses, and Counterclaim to the Plaintiff Regent Insurance Company's Complaint ("Defendants' Counterclaim") at pages 20-31, ¶¶ 1-62.

[6]     Compare Declaratory Judgment Complaint and Amended Declaratory Judgment Complaint.

(Footnote 6 continued):

- 5 -

Regent's Amended Declaratory Judgment Complaint contained eight counts seeking declaratory judgment based upon two coverage provisions and numerous exclusions contained in the Policy.[7]  Plaintiff initially sought summary judgment on all Counts, I through VIII, arguing that neither Coverage A nor Coverage B in the Policy applied to the Segal Action; and, alternatively, that if either Coverage A or Coverage B did apply, then several policy exclusions under each Coverage applied to bar coverage.

The Strasser defendants also sought summary judgment with respect to their Counterclaim regarding Regent's duty to defend and indemnify.  The Strasser defendants argued that Coverage B applied to the malicious prosecution claim in the Segal Action, and that none of the four Coverage B exclusions asserted by plaintiff applied to bar coverage.[8]

Despite the wide-ranging pleadings and supporting briefs, the parties conceded at oral argument on June 17, 2010 that the only contested issue is whether the Knowing Violation of Rights of Another ("Knowing Violation") Policy exclusion bars the

---

(Continuation of footnote 6):

Because plaintiff's amendments were limited to establishing the court's subject matter jurisdiction, I did not require further pleadings after plaintiff's Amended Declaratory Judgment Complaint was filed.  (See September 23, 2010 Order).

[7]     Amended Declaratory Judgment Complaint  ¶¶ 35-108.

[8]     Defendant's Counterclaim at pages 24-26, ¶¶ 20-26, 30-31.

malicious prosecution claim in the Segal Action from coverage under Coverage B.[9]

### The Segal Action

On November 5, 2007 plaintiffs Kenneth Segal, The Karen and Kenneth Segal Descendants Trust ("Trust"), and Segal and Morel, Inc. ("S&M") (collectively "the Segal plaintiffs") initiated the civil action underlying the within case.  The Segal Action is captioned as Segal v. Strausser Enterprises Inc., and was assigned to me as case number 07-cv-04647.

The Segal Action arose from purchase agreements whereby S&M contracted to purchase several parcels of land from defendant

---

[9]     Transcript of Oral Argument [styled "Hearing" in the transcript] Before The Honorable James Knoll Gardner[,] United States District Judge, June 17, 2010 ("N.T."), at pages 11 and 35-36.

Specifically, the Strausser defendants conceded that Coverage "A" is not applicable to the within dispute, which pertained to Counts I through IV of the Amended Declaratory Judgment Complaint. (N.T. at page 11). Plaintiff Regent conceded that the Policy exclusions pertaining to Counts VI through VIII were not applicable to the within dispute.  (N.T. at pages 35-36).

Accordingly, I dismiss Counts I through IV and VI through VIII as moot.  Therefore, Count V, which involves the "Knowing Violation" exclusion is the only remaining claim for declaratory relief.

Regent's motion for summary judgment lists two additional counts for declaratory relief that do not appear in the Amended Declaratory Judgment Complaint.  Regent's seeks declaratory judgment because "The Personal and Advertising Provision Would not Apply" (Count V of Regent's summary judgment motion).  Further, Regent seeks declaratory relief based on the assertion that "The Segal Plaintiffs' Claim for Punitive Damages is not Covered" (Count X of Regent's summary judgment motion).  (Plaintiff Regent Insurance Company's Motion for Summary Judgment, pages 15 and 22).

Because these Counts were not set-forth in Regent's Amended Complaint for Declaratory Judgment, I do not address them as separate counts. Regardless, the underlying relief sought in these additional counts is the same: "that [Regent] has no duty to defend or indemnify [the Strausser defendants]".  (Plaintiff Regent Insurance Company's Motion for Summary Judgment, pages 17 and 23).

SEI.[10]  The Segal Complaint alleges that S&M assigned all rights
and obligations arising under the purchase agreements and
subsequent amendments to several limited liability companies (the
"S&M LLCs") of which Kenneth Segal and the Trust are the only
members.  Then, on December 21, 2005, Kenneth Segal and the Trust
(collectively the "Segal sellers") contracted to sell their
interests in the S&M LLCs to K. Hovnanian Pennsylvania
Acquisitions, LLC ("Hovnanian Acquisitions"), by way of a sales
agreement that took several months to negotiate and finalize
("the Hovnanian Agreement").[11]

     The Segal Complaint alleges that the Segal sellers
attempted to meet with the Strausser defendants to discuss the
sale of memberships in the S&M LLCs to Hovnanian Acquisitions,
but that, in an attempt to interfere with the Hovnanian Agreement
and to gain leverage by which to exact monetary concessions from
the Segal sellers, defendant Gary Strausser and other SEI
representatives refused to meet with the Segal sellers.[12]

     The Segal Complaint further alleges that two days prior
to closing on the Hovnanian Agreement, SEI, through its attorney,
Leonard Mellon, filed a lawsuit in the Court of Common Pleas of

---

[10]     In the parties' respective cross-motions for summary judgment, the
Segal Complaint is attached as Plaintiff's Exhibit A and Defense Exhibit A,
respectively.

[11]     Segal Complaint (Plaintiff's Exhibit A and Defense Exhibit A to
cross-motions for summary judgment), at Exhibit pages 6-7 and 12, ¶¶ 15-19 and
34-35.

[12]     Id. at pages 13-14, ¶¶ 39-41.

Northampton County, Pennsylvania ("Northampton County Action") to stop the transfer of the properties based on a right of first refusal, as well as a notice of entry of lis pendens against the property.[13]

As a result of the lis pendens, the Segal Plaintiffs allege that Hovnanian Acquisitions refused to proceed with the closing. They aver that the Strausser defendants refused to withdraw the lis pendens, and that Hovnanian Acquisitions terminated the Hovnanian Agreement because the Segal sellers were unable to provide good title to the properties.[14]

The Segal Complaint alleges that the filing of the Northampton County Action was frivolous and in bad faith because: (1) the Strausser defendants and attorney Mellon knew that the purchase agreements had binding arbitration clauses and very limited rights of first refusal, and that the Hovnanian Agreement did not trigger those rights of refusal; and (2) the Strausser defendants lacked the financial ability to exercise the rights of first refusal, even if properly triggered.[15]

The Strausser defendants advised Regent, their insurer, of their involvement as defendants in the Segal Action and claimed that they were entitled to coverage for the claims

---

[13]    Segal Complaint at pages 14-15, ¶¶ 42-43 and 46.

[14]    Id. at pages 17 and 20-22; ¶¶ 54, 63-64 and 68.

[15]    Id. at pages 15-16, ¶¶ 47-49.

asserted in the Segal Complaint.  Regent provided a defense for
the Strausser defendants' in the ongoing Segal Action subject to
a reservation of rights.[16]  In an attempt to exercise its
reserved rights, Regent now seeks a declaration from the court
that it has no duty to defend or indemnify the Strausser
defendants in the Segal Action.

## FACTS

Based upon the pleadings, record papers and exhibits,
and the agreements of counsel at oral argument, the pertinent
facts are as follows.

Count III of the Segal Complaint asserts a
Dragonetti Act claim against defendants for malicious prosecution
-- which in the statute is designated "Wrongful use of civil
proceedings", 42 Pa.C.S.A. § 8351.  The crux of the Segal
plaintiffs' Dragonetti Act claim is that the Strausser defendants
"not only commenced, but continued to prosecute, [the Northampton
County Action] without probable cause, and primarily for the
improper purpose of attempting to secure for SEI and Strausser

---

[16]     Plaintiff set forth its reservation of rights in a letter to
defendants dated December 5, 2008, which concludes:

> Regent Insurance Company hereby reserves its rights to deny
> Strausser Enterprises, Inc. and Gary Strausser coverage and
> to withdraw from the defense of those aspects of the [Segal]
> Complaint which may not be covered by its policy of
> insurance and to refuse to make payment in the event a
> judgment is rendered against Strausser Enterprises, Inc. or
> Gary Strausser for damages which are not covered by its
> policy.

Reservation of Rights Letter (Plaintiff's Exhibit C and Defense Exhibit C to
cross-motions for summary judgment) at page 9.

contractual rights that were neither bargained for nor contained within the Purchase Agreements, as amended."[17]

Two of the Purchase Agreements between S&M, whose rights thereunder were subsequently assigned to the S&M LLCs and thus to Kenneth Segal and the Trust, and SEI contained limited rights of first refusal.  However, the circumstances sufficient to trigger defendant's limited rights of first refusal never came to pass.  The Segal Complaint maintains that the Strausser defendants were well aware that their rights of first refusal were not triggered, but filed the Northampton County Action despite that knowledge.[18]

The Purchase Agreements also contained arbitration provisions requiring that "[i]n the event of a dispute over any of the terms of this Agreement, [S&M] and [SEI] agree that they will submit that dispute to binding arbitration."[19]  The Segal Complaint maintains that the Strausser defendants "knew of [these] express, unambiguous and unequivocal obligation[s]" prior to filing the Northampton County Action, but filed the action anyway.[20]

---

[17]    Segal Complaint, at page 34, ¶ 123.

[18]    Id. at pages 8-9, ¶¶ 20-25.

[19]    Id. at page 10, ¶ 26.

[20]    Id. at pages 10-11, ¶¶ 28-29.

The Segal Complaint also alleges that the Strasser defendants: (1) knew that the arbitration provisions applied to the dispute;[21] (2) knew that their limited rights of first refusal were not triggered;[22] and (3) acknowledged the overbreadth of the complaint in the Northampton County Action by admitting that the lis pendens was filed to encompass the entire S&M property even though the Strasser defendants knew that the limited rights of first refusal only applied to a fraction of the property.[23]

The Segal Complaint contends that the Strasser defendants filed the Northampton County Action knowing that it was baseless but in the hope that clouding the title to the property with the lis pendens would cause the Hovnanian Agreement to fall through, thereby weakening the Segal plaintiffs' economic position and creating an opportunity to exact additional benefits from the Segal plaintiffs.[24]

### STANDARD OF REVIEW

### Motion for Summary Judgment

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to

---

[21]    Segal Complaint at pages 10-11, ¶¶ 26-29.

[22]    Id. at pages 8-9, ¶¶ 20-25.

[23]    Id. at pages 19-20, ¶¶ 60-61.

[24]    Id. at page 21-22, ¶¶ 62, 69.

interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue of
material fact and that the moving party is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2520,
91 L.Ed.2d 202, 211 (1986); Federal Home Loan Mortgage
Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 433
(3d Cir. 2003).  Only facts that may affect the outcome of a case
are "material."  Moreover, all reasonable inferences from the
record are drawn in favor of the non-movant.  Anderson, supra.

        Although the movant has the initial burden of
demonstrating the absence of genuine issues of material fact, the
non-movant must then establish the existence of each element on
which it bears the burden of proof.  See Watson v. Eastman Kodak
Company, 235 F.3d 851, 858 (3d Cir. 2000).  A plaintiff cannot
avert summary judgment with speculation or by resting on the
allegations in his or her pleadings, but rather must present
competent evidence from which a jury could reasonably find in her
favor.  Ridgewood Board of Education v. N.E. for M.E.,
172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen,
889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

## **Insurer's Duty to Defend and Indemnify an Insured**

### A. Duty to Defend

The standard for evaluating an insurer's duty to defend and indemnify requires a determination of whether the third-party's complaint against the insured triggers coverage under the applicable policy.  Mutual Benefit Insurance Company v. Haver, 555 Pa. 534, 539, 725 A.2d 743, 745 (Pa. 1999).

The insurer's obligation to defend is determined solely by the allegations contained on the face of the underlying complaint.  Moreover, an insurer is not required to defend a claim when it is apparent on the face of the complaint that none of the injuries fall within the purview of the insurance Policy. Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Company, 589 Pa. 317, 331, 908 A.2d 888, 897 (Pa. 2006).

"If the complaint avers facts that *might support recovery* under the Policy, coverage is triggered and the insurer has a duty to defend." Sikirica v. Nationwide Insurance Co., 416 F.3d 241, 225-26 (3d Cir.2005)(emphasis added).  The burden then shifts to the insurer to demonstrate that an exclusion places the particular harm outside of the Policy's reach. State Farm Fire & Casualty Co. v. Estate of Thomas W. Mehlman, 589 F.3d 105, 111 (3d Cir. 2009).

Exclusions from coverage are strictly construed against the insurer.  Nationwide Mutual Insurance Company v. Cosenza, 258 F.3d 197, 206-07 (3d Cir.2001).

The court must "evaluate the terms of the Policy to determine whether they are ambiguous."  Devcon International Corporation v.  Reliance Insurance Company, 609 F.3d 214, 218 (3d Cir. 2010)(citing Lucker Manufacturing v. Home Insurance Company, 23 F.3d 808, 814 (3d Cir. 1994)).  A term is ambiguous if more than one reasonable interpretation of the term exists.  Id.

If the court finds that the Policy is unambiguous, the court must give effect to the terms as stated on the face of the Policy.  However, if the court identifies an ambiguity in the Policy, the court must resolve the ambiguity by giving effect to the interpretation of the term that is most favorable to the insured, as the non-drafting party.  Id. (citing J.C. Penney Life Insurance Company v. Pilosi, 393 F.3d 356, 364 (3d Cir. 2004)).

In multi-claim or multi-count suits, "if a single claim is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim."  The Frog, Switch & Manufacturing Co., Inc. v. The Travellers Insurance Company, 193 F.3d 742, 746 (3d Cir. 1999).

B. Duty to Indemnify

"[T]he duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause." Pacific Indemnity Company v. Linn, 766 F.2d 754, 767 (3d Cir. 1985).  However, "[a]n insurer's duty to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured." Allstate Insurance Company v. Drumheller, 185 Fed.Appx. 152, 154 n.2 (3d Cir. 2006)(internal citations omitted).

A duty to defend can exist without a duty to indemnify. However, a duty to indemnify cannot exist without a duty to defend.  The Frog, Switch & Manufacturing Co. Inc., 193 F.3d at 746.

Unlike the duty to defend, "the duty to indemnify cannot be determined merely on the basis of whether the factual allegations of [the underlying] complaint potentially state a claim against the insured." Pacific Indemnity Company v. Linn, 590 F.Supp. 643, 650 (E.D.Pa. 1984)(Shapiro, J.) (quoting C.H. Heist Caribe Corporation v. American Home Assurance Company, 640 F.2d 479, 483 (3d Cir. 1981)) (internal quotations omitted).

"[T]he duty to indemnify...arises only if it is established that the insured's damages are actually covered by the terms of the policy." Drumheller, 185 Fed.Appx. at 154 n.2.

In other words, an insurer "must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy." <u>Britamco</u>, 845 F.Supp. at 1094; <u>see</u> <u>Britamco Underwriters, Inc. v. Stokes</u>, 881 F.Supp. 196, 198 (E.D.Pa. 1995)(Katz, J.), <u>cited in</u> <u>Regis Insurance Company v. All American Rathskeller, Inc.</u>, 976 A.2d 1157, 1161 (Pa.Super. 2009).

Therefore, when a complaint "alleges both conduct that comes under the policy and conduct that does not...[the insurer] need not indemnify its insured if the conduct for which the insured is found liable does not come within the scope of the policy." <u>Britamco</u>, 845 F.Supp. at 1094.

### **DISCUSSION**

#### A.   <u>Malicious Prosecution is Expressly<br>Included Under Coverage B</u>

Both Regent and the Strausser defendants recognize <u>Photomedex, Inc. v. St. Paul Fire & Marine Insurance Company</u>, 2008 U.S.Dist. LEXIS 8526 (E.D.Pa. February 6, 2008)(Yohn, J.), as persuasive authority in this case.  The parties agree that, under Pennsylvania law, the court must enforce the clear, unambiguous meaning of the language in an insurance contract when such a clear meaning exists.  <u>Id.</u> at *62-63.  However, plaintiff and defendants each cite <u>Photomedex</u> to argue for opposite outcomes in this case.[25]

---

[25]     The commercial general liability("CGL") policy at issue in

(Footnote 25 continued):

I find that Photomedex clearly supports the conclusion that the Segal plaintiff's malicious prosecution claim against the Strausser defendants is expressly included and clearly within the scope of Coverage B as a "personal and advertising injury" defined by the Policy.

However, contrary to Regent's contentions,[26] Photomedex does not conclusively answer the question of whether the "Knowing Violation" exclusion bars coverage for the malicious prosecution

_____

(Continuation of footnote 25):

Photomedex included "personal injury liability" coverage. That coverage stated, "We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that: [1] results from your business activities; and [2] is caused by a personal injury offenses committed while this agreement is in effect." The policy definition of "personal injury offense" included "malicious prosecution." Photomedex, 2008 U.S.Dist. LEXIS 8526, at *5.

        The CGL policy in Photomedex was also subject to various state-specific endorsements that conformed the policy to the laws of that state.

The Georgia Required Endorsement stated:

            Intentional Acts. The following applies to any agreement
            included that's part of your policy.

            1. The following is added to the Exclusions-Losses We Won't
            Cover, or similarly titled section:

            We won't pay for loss or damage caused by any act committed:
            [1] by or at the direction of any protected person; and [2]
            with the intent to cause a loss.

Photomedex, 2008 U.S.Dist.LEXIS 8526, at *7 n.2.

        The Georgia-specific provision was inapplicable because after analyzing a Pennsylvania-California conflict, the court found that Pennsylvania law governed the interpretation. Id. at *60, 63. As the CGL policy did not include a Pennsylvania Required Endorsement (as compared to the Georgia Required Endorsement within the CGL), see id. at *5-7, the court found that the underlying malicious prosecution was clearly within the "personal injury liability" coverage and, therefore, the insurer had a duty to defend and indemnify for the malicious prosecution action. Id. at *63, 66-67.

        [26]    Plaintiff's Response at pages 3-4.

claim in the Segal Action.  Regent points to the district court's
statement in Photomedex, that "absent *other language*, the policy
obligated [the] [insurer] to indemnify [the insured] for the
underlying malicious prosecution claim."[27]  Regent then argues
that the "Knowing Violation" exclusion under Coverage B is just
the type of "other language...intended to limit coverage" that
the court found absent in Photomedex.  Photomedex, 2008 U.S.Dist.
LEXIS 8526, at *63-65.[28]

Although the district court did cite the Georgia
Required Exclusion as an example of language demonstrating an
insurer's intent to limit coverage, Photomedex, 2008 U.S.Dist.
LEXIS 8526, at *64-65, the Strausser defendants correctly note
that the district court did not actually apply the exclusionary
language in the Georgia Required Endorsement to a malicious
prosecution claim under Pennsylvania law.[29]

Because the policy in Photomedex contained no
Pennsylvania-specific endorsement with language similar to the
"Knowing Violation" exclusion under Coverage B here, the district
court's analysis in Photomedex was complete upon the conclusion

---

[27]    Plaintiff's Response at page 3 (quoting Photomedex, 2008 U.S.Dist.
LEXIS 8526, at *63).

[28]    Plaintiff's Response at pages 3-4.

[29]    Defendants' Reply Brief at page 4 n.2.

that malicious prosecution was expressly included and therefore covered by the policy at issue.  See Id. at *65-67.[30]

Therefore, Photomedex does not persuade me that the "Knowing Violation" exclusion unambiguously bars coverage and eliminates Regent's duty to defend and indemnify the Strausser defendants against the malicious prosecution claim in the Segal Action.

Moreover, even if the "Knowing Violation" exclusion supports Regent's intent to exclude some or all malicious prosecution claims from Coverage B, it would not end the inquiry into Regent's duties.  An insurer's intent is not dispositive as to the meaning and applicability of a coverage provision and exclusion.  See Bishops, Inc. v. Penn National Insurance, A Mutual Company, 984 A.2d 982, 990 (Pa.Super. 2009).

---

[30]    Regent Insurance asserts that "[Photomedex] determined that in Pennsylvania, an insurer 'may' indemnify against malicious prosecution.  This Honorable Court[, in Photomedex,] did not in any way, shape or form require an insurer to defend and/or indemnify a malicious prosecution action, let alone a malicious prosecution that was intentional or knowing."  (Plaintiff's Response at page 4)

Regent Insurance is technically correct.  It was not the court that required St. Paul Fire & Marine to defend and indemnify the malicious prosecution claim against Photomedex; rather, it was the terms of the policy that imposed those duties.  See Photomedex, 2008 U.S.Dist.LEXIS 8526, at *62-67.  Here, because malicious prosecution is expressly included in the policy definition of "Personal and Advertizing Injury" under Coverage B, I must determine whether the "Knowing Violation" exclusion applies here to bar coverage.

B. <u>Applicability of the "Knowing Violation"
Exclusion Under Coverage B</u>[31]

Malicious prosecution under Pennsylvania law -- also termed "Wrongful use of civil proceedings" -- is defined by the Dragonetti Act.[32]  It is not clear from the language of the act whether proof of an improper purpose, and thus intent, is a necessary element of a Dragonetti Act claim, or whether a showing of gross negligence alone could be sufficient.[33]

The Supreme Court of Pennsylvania appears to have spoken somewhat inconsistently regarding the elements of a claim under the act.  On one hand, the Court has stated that under

---

[31]    Regent and the Strausser defendants both attached the Policy as Exhibit "B" to their respective pleadings.  See Document 1-3, filed with plaintiff's Complaint on July 29, 2009, and Document 11-3, filed with defendants' Answer on October 22, 2009.  The citations to the Policy appear as follows: Exhibit "B" at page __.

[32]    Specifically, the Dragonetti Act provides:

> (a) Elements of action.-A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
>> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing proper discovery, joinder of parties or adjudication of the claim on which the proceedings are based; and
>>
>> (2) The proceedings have terminated in favor of the party against whom they are brought.

42 P.S. § 8351(a).

[33]    Section 8351(a)(1) is the primary source of the ambiguity in the present case.  That ambiguity stems from the absence of a comma or other punctuation mark following either the word "manner" or the word "cause."  The absence of a comma makes it unclear whether the first element may be satisfied by a showing of gross negligence alone, or whether a plaintiff must also show an improper, malicious purpose on the part of a defendant.  <u>See</u> 42 P.S. § 8351(a).

Section 8351, "a person who participates in the initiation or continuation of a civil action is subject to liability for wrongful use of civil process if [1] he acts [a] in a grossly negligent manner or [b] without probable cause and [2] the proceedings are terminated against him." Ludmer v. Nernberg, 520 Pa. 218, 221-222, 553 A.2d 924, 925-926 (Pa. 1989) ("Ludmer I")(citing 42 P.S. § 8351(a)). Ludmer I does not identify either malice or an improper cause or purpose, as a necessary element of a Dragonetti Act claim. See Id.

On the other hand, the Supreme Court of Pennsylvania also stated that, under Section 8351, "a cause of action for malicious prosecution has *three* elements; [1] the defendant must have instituted civil proceedings against the plaintiff without probable cause, [2] *with malice*, and [3] proceedings must have terminated in favor of the plaintiff." In re Larsen, 532 Pa. 326, 440, 616 A.2d 529, 587 (Pa. 1992), cert. denied, 510 U.S. 815, 114 S.Ct. 65, 126 L.Ed.2d 34 (1993)(citing Ludmer I, supra)(emphasis added).

While that statement appears to clearly establish "malice" as a necessary element, the Court, again citing Ludmer I, then stated that "[m]alice may be inferred from the absence of probable cause" and, therefore, "[1] *want of probable cause for the defendant's prior use of civil process, and* [2] *a*

*termination of that process in the plaintiff's favor are all that*
*is strictly required.*"  Id. (emphasis added).

Thus, the Supreme Court of Pennsylvania's Opinions in
Ludmer I and Larsen seem to suggest that "malice" is a necessary
element in name only, and that a plaintiff may prevail on a
Dragonetti Act claim by proving only that (1) the defendant acted
either (a) without probable cause or (b) with gross negligence,
and (2) that the proceedings terminated in the now-plaintiff's
favor.  See Larsen, supra; Ludmer, supra.

The Superior Court of Pennsylvania, an intermediate
appellate court, appears to have resolved the ambiguity apparent
from the face Section 8351(a) in favor of the position that an
improper purpose -- such as, but not limited to, actual malice --
is a necessary element of a Dragonetti Act claim.  Specifically,
while a showing of actual malice is not required to state a prima
facie case under the Dragonetti Act, Hart v. O'Malley,
781 A.2d 1211, 1218 (Pa.Super. 2001)("Hart II")(citing Catania v.
Hanover Insurance Company, 389 Pa.Super. 144, 150, 566 A.2d 885,
889 (Pa.Super. 1989)), in order to prevail on a Dragonetti Act
claim, the plaintiff must prove, *inter alia*, that the
"proceedings were instituted for an improper purpose."  Id.
at 1219 (citing Bannar v. Miller, 701 A.2d 242, 247 (Pa.Super.

1997)); <u>see</u> <u>Broadwater v. Sentner</u>, 725 A.2d 779, 784, (Pa.Super. 1999).[34]

Moreover, the United States Court of Appeals for the Third Circuit has stated that "'[a] party seeking redress under [the] Dragonetti [Act] bears a heavy burden' because the plaintiff need not only demonstrate either probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose." <u>Schmidt v. Currie</u>, 217 Fed.Appx. 153, 155 (3d Cir. 2007)(quoting <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 394 (3d Cir. 2002), and citing

---

[34]     The Superior Court of Pennsylvania has been consistent in characterizing two of three elements of a Dragonetti Act claim, namely the lack of probable cause and termination of the proceedings in the plaintiff's favor.  However, while the Superior Court previously described the third element as "malice," it now requires as the third element "that the proceedings were initiated primarily for an improper purpose."  Compare <u>Ludmer v. Nernberg</u>, 433 Pa.Super. 316, 323, 640 A.2d 939, 942 (Pa.Super. 1994), <u>appeal</u> <u>denied</u>, 541 Pa. 652, 664 A.2d 542 (Pa. 1995)("Ludmer II")("malice"); <u>Shaffer v. Stewart</u>, 326 Pa.Super. 135, 140, 473 A.2d 1017, 1020 (Pa.Super. 1984)(same); and <u>Junod v. Bader</u>, 312 Pa.Super. 92, 95, 458 A.2d 251, 253 (Pa.Super. 1983)(same), with <u>Hart v. O'Malley</u>, 436 Pa.Super. 151, 160, 647 A.2d 542, 547 (Pa.Super. 1994), <u>aff'd</u> 544 Pa. 315, 321-323, 676 A.2d 222, 225 (Pa. 1996) ("Hart I")("instituted primarily for an improper cause"); and <u>Kelly-Springfield Tire Company v. D'Ambro</u>, 408 Pa.Super. 301, 305, 596 A.2d 867, 869 (Pa.Super. 1991)(same).

More recently, the Superior Court stated that even where one lacked probable cause, "he is not liable for wrongful use of civil proceedings unless he filed the lawsuit with an improper purpose[,]" and an improper purpose "may be inferred where the action is filed without justification." <u>Broadwater</u>, 725 A.2d at 784.

Thus, it appears that while a showing of actual malice is one method of satisfying the third element of a claim for wrongful use of civil proceedings, that element- -consistent with the text of Section 8351(a) -- may be satisfied by a showing that proceedings were initiated for any purpose "other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 P.S. § 8351(a)(1); <u>see</u> <u>Broadwater</u>, <u>supra</u>; <u>Hart I</u> and <u>II</u>, <u>supra</u>; <u>Kelly-Springfield</u>, <u>supra</u>.

Broadwater, 725 A.2d at 784).  In other words, "even upon showing gross negligence or the absence of probable cause, one is not liable, under the Dragonetti Act, unless plaintiff can demonstrate the suit was filed for an improper purpose." DiLoreto v. Costigan, 600 F.Supp.2d 671, 687 (E.D.Pa. 2009) (Buckwalter, S.J.)(citing Broadwater, 725 A.2d at 784-785).

This position is bolstered by Winner Logistics, Inc. v. Labor & Logistics, Inc. 2011 Phila.Ct.Com.Pl. LEXIS 67 (2011), which defendants attach to their Supplemental Brief.  In Winner Logistics, Inc., the court held explicitly that an "attorney cannot be held liable for gross negligence under the Dragonetti Act unless the jury also finds that the attorney initiated or continued the underlying action for an improper purpose." Id. at at *31.

Accordingly it appears relatively well-settled that proof of an improper motive is necessary to prevail on a Dragonetti Act claim.

If an improper purpose is a necessary element of malicious prosecution under the Dragonetti Act, then malicious prosecution is an intentional tort, and the "Knowing Violation" provision under Coverage B applies to any Dragonetti claims under Pennsylvania law.

If proof of an improper purpose is always necessary to prevail on a Dragonetti Act claim, then Coverage B contains

- 25 -

provisions that are ambiguous at best and contradictory at worst.

An insurance policy provision is ambiguous "if reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning." Vlastos v. Sumitomo Marine & Fire Insurance Co. (Europe) Ltd., 707 F.2d 775, 778 (3d Cir. 1983); see Scottsdale Indemnity Company v. Hartford Casualty Insurance Company, 2008 WL 131105, at *4 (E.D.Pa. January 10, 2008) (Buckwalter, S.J.); Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F.Supp. 1090, 1093 (E.D.Pa. 1994) (Joyner, J.).  However, the language of a policy may not be "tortured to create ambiguities where none exist." Vlastos, 707 F.2d at 778; Britamco, 845 F.Supp. at 1093.

The policy provisions at issue here are, at best, ambiguous.  Specifically, Coverage B states, "[w]e, [Regent Insurance,] *will have the right and duty to defend the insured*, [Gary Strausser and SEI,] against any 'suit' seeking those damages[, for 'personal and advertising injury'.]"[35]  "Personal and advertising injury" includes injury arising out of "malicious prosecution.[36]  Thus, Regent promises, under Coverage B, to defend Gary Strausser or SEI against claims for malicious prosecution.

---

[35]    Exhibit B to each party's cross-motion for summary judgment at page 32 (emphasis added).

[36]    Exhibit B at page 41.

However, Coverage B also states, "we, [Regent Insurance,] *will have no duty to defend the insured*, [Gary Strausser and SEI,] against any suit seeking damages for 'personal and advertising injury' to which this insurance does not apply."[37]  Coverage B then lists "Exclusions" and states that "[t]his Insurance does not apply to: a. Knowing Violations of Rights of Another.  'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'."[38]

If malicious prosecution requires proof of an improper motive or actual malice and, as such, all malicious prosecution claims under Pennsylvania law would fall within the "Knowing Violation" exclusion, then Regent has effectively also promised never to defend Gary Strausser or SEI against a malicious prosecution claim under Pennsylvania law.  The Policy is ambiguous regarding coverage for malicious prosecution because a person of reasonable intelligence who read Coverage B, the "Knowing Violation" exclusion, and the definition of "personal and advertising injury" could reasonably conclude that

---

[37]     Exhibit B at page 32 (emphasis added).

[38]     Exhibit B at page 33.

(a) the Policy never covers malicious prosecution, or (b) the Policy always covers malicious prosecution.[39]

In sum, if malicious prosecution under Pennsylvania's Dragonetti Act is an intentional tort, then Coverage B is a Catch-22: Regent promises to cover the Strausser defendants for claims of malicious prosecution so long as no exclusion applies to bar coverage, but the "Knowing Violation" exclusion always applies to malicious prosecution under the Dragonetti Act.[40]

---

[39]     Regent argues that the language of the "Knowing Violation" exclusion under Coverage B is unambiguous and that the exclusion clearly applies to the Dragonetti Act claim in the Segal Complaint.  In its brief in support of its motion for summary judgment, Regent appears to argue that the "Knowing Violation" exclusion applies to all malicious prosecution claims because malice is a necessary element.  See Plaintiff's Brief at pages 20-23. Then, in opposition to the Strausser defendants' motion for summary judgment, Regent argues that while "malicious prosecution is covered when the alleged conduct is negligent, it is not covered when the malicious prosecution is intentional and knowing, as alleged by the Segal Plaintiffs."  Plaintiff's Response at page 3.

It is highly suggestive of ambiguity that Regent, the drafter of the Policy, contends at one point that the "Knowing Violation" exclusion bars coverage for all malicious prosecution claims, and at another point that it only bars coverage for "intentional and knowing," rather than "negligent," malicious prosecution claims.  Moreover, Regent's assertion that malicious prosecution "is not covered when [it] is intentional and knowing," Id., implicitly asserts that malicious prosecution is never covered under the Policy if, as discussed above, improper purpose is a necessary element under the Dragonetti Act.

[40]     The Third Circuit recently decided Devcon, supra, which addressed insurance policy ambiguity and an insurer's duty to defend and indemnify an insured.  Devcon involved a pollution exclusion from coverage provided for bodily injury caused by an accidental occurrence.  Devcon, 609 F.3d at 217. The insured, Devcon, argued that the scope of the pollution exclusion was ambiguous, and therefore the insurer, Reliance, had a duty to defend and indemnify on various nuisance-related claims arising from construction activities on an airport runway project.  Id. at 216-217.  The pollution exclusion at issue specifically excluded from coverage "bodily injury and property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, mitigation, release, or escape of pollutants at any time."  Id. at 217.

(Footnote 40 continued):

Under Pennsylvania law, ambiguous provisions in insurance contracts are interpreted in favor of the insured. Vlastos, 707 F.2d at 778; Britamco, 845 F.Supp. at 1093. Therefore, resolving this ambiguity in favor of the insureds, I

_____

(Continuation of footnote 40):

The Third Circuit found that "the plain language of the exclusion" placed the alleged harms outside the policy's coverage for bodily injury caused by accidental occurrences.  Id. at 220.  Specifically, the Third Circuit rejected Devcon's argument that the pollution provision was ambiguous:

The trouble with Devcon's approach is that, instead of asking whether the contractual language is clear and then applying the exclusion's unambiguous meaning, [Devcon] looks at the effects of the exclusion and concludes that the language must be unclear because it produces...bad results.

Id. at 221.

The bodily injury coverage and pollution exclusion provision at issue in Devcon are distinguishable from Coverage B and the "Knowing Violation" exclusion here -- particularly in light of the requirement that provisions be assessed on consideration of the whole policy.  Specifically, as the Third Circuit acknowledged, the policy provision at issue in Devcon was a general coverage provision for bodily injury caused by an accidental occurrence with a specific exception for such bodily injury caused by pollution: "The policy...contains numerous exclusions that excise coverage for specific harms caused by the insured."  Id. at 217.

Here, by sharp contrast, the policy expressly provides coverage for a specific harm -- "personal and advertising injury" caused by "malicious prosecution" -- and then circumscribes that coverage with the more-general "Knowing Violation" exclusion.  Moreover, if improper motive is a necessary element of malicious prosecution, then the "Knowing Violation" exclusion would mean that specific, expressly-provided coverage for "personal and advertising injury" caused by "malicious prosecution" would be entirely negated.

Given that I must examine the policy for ambiguity "on consideration of the entire policy" and, therefore must consider Coverage B and the "Knowing Violation" exclusion together, I cannot find that a clear, plain, unambiguous meaning exists.

I note specifically that my finding of ambiguity in the Policy is based on the fact that persons of reasonable intelligence could disagree regarding the meaning of the "Knowing Violation" exclusion in light of Coverage B and the express inclusion of "malicious prosecution" in the definition of "personal and advertising injury."  I have not concluded, as Devcon would clearly prohibit, that the Policy is ambiguous simply because applying the "Knowing Violation" exclusion to bar all malicious prosecution claims would produce an odd result.

declare that Regent Insurance has a duty to defend Gary Strausser
and SEI in the Segal Action.[41]

## C. Duty to Indemnify

Both parties also seek a declaration regarding Regent
Insurance's duty to indemnify the Strausser defendants.

An insurer must indemnify its insured if liability is
found for conduct that falls within the scope of the policy.
Britamco, 845 F.Supp. at 1094.  However, when a complaint
"alleges both conduct that comes under the policy and conduct
that does not...[the insurer] need not indemnify its insured if

---

[41]    It is worth noting that even if I am mistaken and a plaintiff
could prevail in a malicious prosecution claim under the Dragonetti Act by
proving that the defendant acted with gross negligence, Regent would still be
obligated to defend the Strausser defendants in the Segal action.

    An insurer has a duty to defend if the underlying complaint "avers
facts that might support recovery under the Policy...."  Sikirica,
416 F.3d at 225-26.  Regent concedes that malicious prosecution claims based
on negligent conduct are covered under the Policy.  (Plaintiff's Response at
page 3).

    Although the Segal plaintiffs aver that the Strausser defendants
initiated the Northampton County Action as part of "a baseless, spiteful and
malicious plan to derail" the Hovnanian Agreement, and that the Strausser
defendants conduct was "intentional, malicious," and "knowing," it remains
that under the alternative interpretation of the Dragonetti Act, the Strausser
defendants could be found liable to the Segal plaintiffs upon a showing of
gross negligence, but without actually proving the improper motives ascribed
to the Strausser defendants by the Segal plaintiffs and Regent Insurance.

    If a complaint alleges a particular level of culpable knowledge,
but the defendant would still be liable if "a different level of knowledge or
intent were to be found by the jury," then "there is the potential for the
claim to be covered."  Cincinnati Insurance Company v. Trosch,
271 Fed.Appx. 205, 206-207 (3d Cir. 2008).  Where there is the potential for a
claim against a defendant to be covered under the defendant's insurance
policy, the insurer has a duty to defend.  Frog, Switch, 193 F.3d at 746.

    Therefore, in the event I am mistaken and the Segal plaintiffs
need not prove the Strausser defendants' improper motive to prevail on the
Dragonetti Act claim, Regent Insurance nonetheless has a duty to defend the
Strausser defendants in the Segal Action.

the conduct for which the insured is found liable does not come within the scope of the policy." Britamco, 845 F.Supp. at 1094.

Because I conclude that the malicious prosecution claim in the underlying action falls within the scope of the Policy and no exclusion applies, Regent is obligated to indemnify the Strausser defendants with respect to the malicious prosecution claim.

However, Regent's duty to indemnify the Strausser defendant's for the malicious prosecution claim does not extend to providing indemnification for any punitive damages that may be imposed against the Strausser defendants.

Pennsylvania has a strong public policy precluding insurance coverage for punitive damages. Medmarc Casualty Insurance Company v. Arrow International, 2003 U.S.Dist. LEXIS 2052 at *4.  This is because punitive damage awards are designed to punish an individual litigant for misconduct rather than provide compensation to a victim. Creed v. Allstate Insurance Company, 365 A.2d 10, 12 (Pa.Super. 1987).

The Strausser defendants contend that indemnification for punitive damages is not precluded because the claims in the underlying action seek to hold the Strausser defendants vicariously liable for the actions of their attorney, Leonard Mellon.  However, the Segal Complaint clearly alleges that the Strausser defendants' are liable for their own conduct.

Specifically, the Segal Complaint alleges the Strausser defendants instructed Attorney Mellon "to file anything that he could to stop the [Hovnanian] transaction."[42]

Therefore, Regent's duty to indemnify the Strausser defendants in the malicious prosecution does not extend an award of punitive damages.

Nor does the duty to indemnify extend to every claim in the underlying action.  The Strausser defendants seek broad declaratory relief and request a declaration that Regent "has a duty both to defend and indemnify" the Strausser defendants in the underlying action.[43]

Here, while the claim for malicious prosecution in the underlying action is within the scope of the policy, the Segal Complaint also contains claims for tortious interference with contract, tortious interference with prospective economic relations and abuse of process.

However, the Strausser defendants do not appear to contend that the Policy applies to the claims for tortious interference with contract, tortious interference with prospective economic relations and abuse of process.[44]

---

[42]     Segal Complaint at page 22, ¶69.

[43]     Counterclaim at page 30, ¶ 62.

[44]     The Strausser defendants' brief in support of its motion for summary judgment does not address whether the claims for tortious inferference with contract, tortious interference with prospective economic relations, or

(Footnote 44 continued):

Therefore, although I declare that Regent has a duty to indemnify the Strausser defendants with respect to the malicious prosecution claim in the underlying action, this duty does not extend to the other claims asserted in the underlying action against the Strausser defendants.[45]

### CONCLUSION

For the reasons stated above, I declare that Regent has a duty to defend the Strausser defendants in the Segal Action.  I also declare that Regent has a duty to indemnify the Strausser defendants with respect to the claim for malicious prosecution in the Segal action.

However, I also declare that Regent has no duty to indemnify the Strausser defendants for the claims of tortious interference with prospective economic relations, tortious interference with contract, or abuse of process.  Moreover, I

---

(Continuation of footnote 44):

abuse of process are covered by the Policy.  (See Defendant's Response).  Rather, the Strausser defendants' motion for summary judgment is based entirely on malicious prosecution falling within the Policy.

Because the Strausser defendants, as counter-claimants, do not address the additional counts in the Segal Complaint, I consider defendants' claim for declaratory relief abandoned to the extent that defendants seek a declaration beyond the scope of whether the claim for malicious prosecution is covered by the Policy.

[45]     Although the duty to indemnify does not extend to the claims beyond malicious prosecution in the Segal action, as explained above, in multi-claim or multi-count suits, "if a single claim is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim."  The Frog, Switch & Manufacturing Co., Inc. v. The Travellers Insurance Company, 193 F.3d 742, 746 (3d Cir. 1999).  Therefore, Regent is obligated to defend the underlying action in its entirety until there is no possibility that the underlying plaintiff could recover on the claim for malicious prosecution.

declare that Regent has no duty to indemnify the Strasser defendants for any award of punitive damages.

Accordingly, I grant in part, deny in part, and dismiss in part, plaintiff Regent Insurance's motion for summary judgment.  I grant in part and deny in part the Strasser defendants' motion for summary judgment.